UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| KINTE J. JOHNSON, JR., et al., | |
| Plaintiffs, | |
| v. | Case No. 3:23-CV-902-CCB-SJF |
| DAVE MURRAY, et al., | |
| Defendants. | |

**OPINION AND ORDER**

Plaintiffs Kinte Johnson, Jr. ("Kinte") and Tristan Johnson ("Tristan") sued Defendant Officer Dave Murray under 42 U.S.C. § 1983 and *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), alleging that Murray violated their constitutional rights during a traffic stop. Murray has moved to dismiss all claims against him. (ECF 26). For the reasons stated herein, the motion to dismiss is granted in part and denied in part.

I. **FACTUAL BACKGROUND**

Plaintiffs allege that on October 13, 2021, they were driving a rented vehicle along the highway 94 corridor in Porter County, Indiana, when they were pulled over by Defendant Portage, Indiana police officer James Eagan, purportedly for speeding. (ECF 8 at ¶ 8). Tristan allegedly provided Eagan his driver's license and rental agreement. (*Id*. at ¶¶ 9-10). Following further questioning from Eagan, Tristan informed Eagan that there were no firearms or illegal substances in the vehicle. (*Id.* at ¶ 10). Eagan also allegedly questioned Kinte, and Kinte informed Eagan that were driving to

Illinois to potentially purchase a tractor trailer, and that they possessed $50,000 U.S. Currency. (*Id.* at ¶ 11). Eagan allegedly detained Plaintiffs for approximately 30-45 minutes as they waited for a K-9 unit to arrive. (*Id.* at ¶ 12). Once the K-9 arrived, Eagan allegedly informed Plaintiffs that the dog had a hit on the vehicle. (*Id.* at ¶ 13). The vehicle was searched, but no contraband was allegedly found. (*Id.*). In the meantime, Murray, a Portage County police officer and United States Drug Enforcement Administration ("DEA") special agent, as well as other police officers, arrived. (*Id.* at ¶¶ 6, 14). For reasons allegedly unknown to Plaintiffs, a second K-9 unit was requested. (*Id.* at ¶ 15). While waiting for the second K-9 to arrive, Murray allegedly asked Plaintiffs additional questions, and Plaintiffs showed Murray their text exchange with the seller of the tractor trailer. (*Id.* at ¶ 16). By the time a second K-9 arrived, Plaintiffs had been allegedly detained alongside the highway for several hours. (*Id.* at ¶ 17). When the second K-9 arrived, Murray allegedly directed that some of the U.S. Currency be put in an envelope. (*Id.* at ¶ 19). The envelope containing the U.S. Currency, and three empty envelopes, were placed on the side of the highway. (*Id.*) The K-9 handler ran the dog beside the four envelopes, and the K-9 allegedly hit on an empty envelope. (*Id.* at ¶ 21). The K-9 was allegedly pulled off, performed a search again, and laid on the envelope containing the U.S. Currency. (*Id.*). Murray allegedly informed Plaintiffs that the U.S. Currency was being seized because it was connected with drugs. (*Id.* at ¶ 22). Eagan then allegedly issued a warning for speeding. (*Id.* at ¶ 23). Plaintiffs allegedly were unable to purchase the tractor trailer for their businesses, and recovered the U.S. Currency following a claims process nine months later. (*Id.* at ¶¶ 24, 26). Plaintiffs sued

2

Murray and Eagan for the alleged violation of their constitutional rights. Murray has moved to dismiss all claims against him under Fed. R. Civ. P. 12(b)(6).

## II. STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554 (2007)); *accord McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2013) (a complaint "must contain 'allegations plausibly suggesting (not merely consistent with)' an entitlement to relief"). "[A] formulaic recitation of the elements of a cause of action," and "naked assertions" without supporting facts are inadequate. *Id.* (quoting *Twombly,* 550 U.S. at 557). A complaint therefore fails to state a claim if it does not "describe the claim in sufficient detail to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests [or] plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (internal quotations omitted).

## III. ANALYSIS

Plaintiffs have asserted claims against Murray under 42 U.SC. § 1983 arising from Murray allegedly unconstitutionally detaining and searching Plaintiffs (Count I), unconstitutionally seizing Plaintiffs' U.S. Currency (Count II), and failing to intervene to prevent the violation of Plaintiffs' constitutional rights (Count III). Plaintiffs also assert a claim pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) (Count IV). In moving to dismiss each of Plaintiffs' claims, Murray

3

makes several arguments. First, Murray argues that each of Plaintiffs' § 1983 claims fail because Plaintiffs do not plausibly allege Murray was acting under color of state law. Second, Murry argues that Plaintiffs' § 1983 failure to intervene claim also fails because Plaintiffs do not allege Murray was present during Eagan's interactions with Plaintiffs. Third, Murray argues that Plaintiffs fail to state a *Bivens* claim. And fourth, even if Plaintiffs' plausibly state a claim, Murray argues he is entitled to qualified immunity because his actions were reasonable following hits from the two K-9 units. Murray's arguments will be addressed in turn.

### a. Acting under color of state law

To state a claim under § 1983, a plaintiff must allege two elements: "(1) the conduct complained of was committed by a person acting under color of state law; and (2) the activity deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Case v. Milewski*, 327 F.3d 564, 566 (7th Cir. 2003). A defendant may act under the color of state law under two circumstances. The first "is when the state has cloaked the defendants in some degree of authority — normally through employment or some other agency relationship." *Case*, 327 F.3d at 567. The second circumstance is when the defendant has "conspired or acted in concert with state officials to deprive a person of his civil rights." *Id.* Defendants argue that Plaintiffs have failed to sufficiently allege that Murray was acting under the color of state law under either theory, therefore Murray's § 1983 claims under Counts I, II, and III must be dismissed.

### i. Cloaked in state authority

Not every action by a state official or employee is deemed as occurring "under color" of state law. *Case*, 327 F.3d at 567. Acts by a state official "are not made under color of state law unless they are related in some way to the performance of the duties of the state office." *Id.* (quoting *Honaker v. Smith*, 256 F.3d 477, 484-84 (7th Cir. 2001)). Whether an officer acted under color of state law "should turn largely on the nature of the specific acts the police officer performed, rather than on merely whether he was actively assigned at the moment to the performance of police duties." *Pickrel v. City of Springfield, Ill.*, 45 F.3d 1115, 1118 (7th Cir. 1995) (allegations that officer was wearing his police uniform, displayed his badge, drove in a marked squad car, and arrested plaintiffs sufficient to allege officer acted under state authority); *see also Askew v. Bloemker*, 548 F.2d 673, 677 (7th Cir. 1976) ("dual-status" agents were acting under federal law when conducting a raid and not subject to § 1983 liability, even when agents wore city police department badges, remained accountable to city police supervisors, and salary was paid by the city police department, where raid resulted from federal investigation and arrests were for suspected federal law violations).

Plaintiffs allege that Murray was acting as a law enforcement officer in the scope of his employment with the Porter County Sheriff's Office in Valparaiso, Indiana, and was on assignment as a special agent with the DEA. (ECF 8 at ¶ 6). After Eagan pulled over Plaintiffs, Murray arrived at the scene. Murray allegedly directed that some of the U.S. Currency be placed in a manilla envelope and alongside the highway. A separate K-9 handler ran the K-9 beside the line of envelopes. Murray advised the Plaintiffs that

5

the money was being seized because it was "connected with drugs." (ECF 8 at ¶ 22). Plaintiffs then allege that "Murray and the DEA" possessed the U.S. Currency seized from Plaintiffs. (ECF 8 at ¶ 27). In Plaintiffs' response in opposition to Murray's motion to dismiss, they also assert that Murray was "on assignment with the DEA" at the time of the stop. (ECF 32 at 2).

Based on the allegations in the amended complaint, Murray arrived only after a K-9 had a "hit" on the vehicle, seized the U.S. Currency on behalf of the DEA, and left. Accordingly, Plaintiffs do not allege sufficient facts to support an inference that Murray was cloaked with state authority at the time of the alleged conduct.

### ii. Conspiracy with state officials

A federal employee may still be acting under the color of state law if they conspire with state officials to deprive a person of their civil rights. *Case*, 327 F.3d at 567 ("[I]t is assumed that a § 1983 action can lie against federal employees—as it can against private individuals—if they conspire or act in concert with state officials to deprive a person of her civil rights under color of state law."). "To establish conspiracy liability in a § 1983 claim, the plaintiff must show that (1) the individuals reached an agreement to deprive him of his constitutional rights, and (2) overt acts in furtherance actually deprived him of those rights." *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015). To satisfy this plausibility requirement, a plaintiff may plead: "(1) direct allegations of an agreement, like an admission by a defendant that the parties conspired; or (2) more often, circumstantial allegations of an agreement, which are claimed facts that collectively give rise to a plausible inference that an agreement existed." *797 Alarm*

6

*Detection Sys., Inc. v. Vill. of Schaumburg*, 930 F.3d 812, 827 (7th Cir. 2019). A bare allegation of conspiracy is not enough. *Cooney v. Rossiter*, 583 F.3d 967, 970 (7th Cir. 2009) ("[M]ere suspicion that persons adverse to the plaintiff had joined a conspiracy against him or her was not enough.").

Plaintiffs allege that on October 13, 2021, Murray and Eagan, "in conspiracy with one another," committed an unlawful search and seizure of Plaintiffs and their property. (ECF 8 at ¶¶ 30, 35). Plaintiffs allege that Murray arrived after Eagan unlawfully pulled over Plaintiffs. Plaintiffs do not allege explicitly in the amended complaint that Murray and Eagan reached any agreement to deprive Plaintiffs of their constitutional rights. In Plaintiffs' response, they also allege that Murray and Eagan have allegedly "teamed up to detain individuals driving through Indiana" on other occasions.[1] (ECF 32 at 6). At the pleading stage, that is sufficient. Murray argues that the failure to explicitly allege that Murray and Eagan entered into an agreement is fatal to their claim. But as the Seventh Circuit noted, "[u]nder *Twombly*, all plaintiff needed to allege was a plausible account of conspiracy," and "we will not dismiss a complaint for failure to recite language explicitly linking these factual details to their obvious suggestion of collusion." *Geinosky v. City of Chicago*, 675 F. 3d 743 (7th Cir. 2012) (reversing grant of motion to dismiss despite complaint "mak[ing] only rather conclusory direct allegations of conspiracy"). Plaintiffs sufficiently allege facts to

---

[1] The Court may consider Plaintiffs' additional alleged facts in their response because they are consistent with Plaintiffs' allegations in their amended complaint. *See Smith v. Dart*, 803 F.3d 304, 311 (7th Cir. 2015).

plausibly show that Murray conspired with a state actor—here, Eagan—to deprive them of their constitutional rights.

### b. Failure to intervene

Murray also moves to dismiss Count III of the amended complaint, which asserts a violation of § 1983 for failure to intervene. An officer may be liable under § 1983, even as a bystander, if the officer "(1) had reason to know that a fellow officer was using excessive force or committing a constitutional violation, and (2) had a realistic opportunity to intervene to prevent the act from occurring." *Lewis v. Downey*, 581 F.3d 467, 472 (7th Cir.2009). "A realistic opportunity to intervene may exist if an officer could have called for a backup, called for help, or at least cautioned [the officer] to stop." *Stewardson v. Biggs*, 43 F.4th 732, 736 (7th Cir. 2022).

Plaintiffs do not allege that they committed a traffic violation, although they allege Eagan issued them a ticket for speeding. "Generally, the decision to stop a car is reasonable, and comports with the Fourth Amendment, where the police have probable cause to believe that a traffic violation has occurred." *United States v. Simon*, 937 F.3d 820, 828 (7th Cir. 2019). Even when (or if) an officer has probable cause to believe a traffic violation has occurred, an officer violates the Fourth Amendment by taking investigatory steps unrelated to the stop's mission, without additional reasonable suspicion, if those steps unreasonably prolong the stop. *Rodriguez v. United States*, 575 U.S. 348, 354 (2015). That includes impermissibly prolonging a stop to conduct a dog sniff. *United States v. Johnson*, 93 F.4th 383, 387 (7th Cir. 2024).

8

Before Murray arrived, Plaintiffs allege that Eagan unlawfully searched their vehicle and continued their unlawful detention for at least 45 minutes while waiting for the first K-9 unit to arrive. Murray argues that Plaintiffs' failure to intervene claim must be dismissed because there is no allegation that Murray was present during that 45-minute period. However, Plaintiffs allege that Murray and Eagan conspired to violate their constitutional rights, and that Murray was present when their unconstitutional rights continued to be violated.

After waiting for the first K-9 to arrive, Eagan allegedly informed the Plaintiffs that the dog had a "hit" on the vehicle. But "[t]he vehicle was then searched, and no contraband of any kind was found." (ECF 8 at ¶ 13). Murray allegedly arrived, and for reasons unknown to Plaintiffs, a second K-9 unit was called. While "[a]n alert from an adequately trained and reliable drug-detection dog is sufficient to give rise to a finding of probable cause," the drug-detection dog must still be reliable. *United States v. Bentley*, 795 F.3d 630, 635 (7th Cir. 2015) (citation omitted) (a showing that a drug-detection dog was not adequately trained and reliable weakens the case for probable cause). It can reasonably be inferred that Murray was aware that any probable cause that may have existed was diminished when no contraband was found after the first K-9 alerted because Murray was present while waiting for the second K-9.[2]

---

[2] Even if Eagan learned that the Plaintiffs possessed a large sum of money when he first allegedly spoke with Kinte, the possession of cash, standing alone, is insufficient to establish probable cause. *United States v. Bostic*, No. 1:22-CR-20-HAB, 2024 WL 5055077, at *6 (N.D. Ind. Dec. 7, 2024) (citing *United States v. $506,231 in U.S. Currency*, 125 F.3d 442 (7th Cir. 1997)).

9

And even if Murray was unaware that no contraband was found in the vehicle, the second K-9 allegedly initially alerted to an envelope that did not contain the U.S. Currency, and did not alert to the envelope containing the U.S. Currency until after it was given another opportunity. Taking all reasonable inferences in Plaintiffs' favor, the alleged false alert from the second K-9 and opportunity to perform another search also casts doubt on the K-9's reliability and the existence of probable cause to continue to detain the Plaintiffs. *Florida v. Harris*, 568 U.S. 237, 247 (2013) (defendant may challenge dog's reliability in determining whether probable cause existed, and, even if "dog is generally reliable, circumstances surrounding a particular alert may undermine the case for probable cause—if, say, the officer cued the dog (consciously or not)"); *Miller v. City of Plymouth*, No. 2:09-CV-205-JVB, 2012 WL 3527229, at *5 (N.D. Ind. Aug. 15, 2012) (dispute whether detection dog reliable where officer allegedly cued the dog to alert by repeatedly commanding the dog to sit).

Taking the allegations as true and all reasonable inferences in Plaintiffs' favor, Plaintiffs plausibly allege that Murray failed to intervene when Eagan allegedly violated their constitutional rights by searching and detaining the Plaintiffs without probable cause.[3]

---

[3] Plaintiffs allege that Murray and the DEA seized the U.S. Currency, not Eagan. The Court therefore does not interpret Plaintiffs' amended complaint as asserting a § 1983 failure to intervene claim arising from the alleged unlawful seizure of their U.S. Currency.

### c. *Bivens* claims

A form of relief for violations of constitutional rights against federal employees, acting under the color of federal law, is a claim under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). Plaintiffs allege that Murray violated their Fourth and Fifth Amendment rights by detaining Plaintiffs without probable cause, and by seizing the U.S. Currency without probable cause or due process. (ECF 8 at ¶ 45). In *Bivens*, the Supreme Court recognized an implied cause of action against federal narcotics officials for alleged Fourth Amendment violations arising from a warrantless search, seizure, and excessive use of force in the plaintiff's home. 403 U.S. at 391-92. The Supreme Court has since permitted a *Bivens*-type action and recognized an implied cause of action for violation of constitutional rights in only two other occasions. The first in a former congressional staffer's Fifth Amendment gender-discrimination claim. *Davis v. Passman*, 442 U.S. 228 (1979). The second in a federal prisoner's inadequate-care claim under the Eighth Amendment. *Carlson v. Green*, 446 U.S. 14 (1989). The Supreme Court has declined to find additional implied causes of action under the Constitution since *Carlson*, reasoning that "[a]t bottom, creating a cause of action is a legislative endeavor." *Egbert v. Boule*, 596 U.S. 482, 491 (2022). The Supreme Court has not overturned *Bivens* and its progeny, but has emphasized that recognizing a cause of action under *Bivens* "is a disfavored judicial activity." *Id.* at 491. To that end, the Supreme Court has instructed courts to partake in a two-step inquiry to determine whether a proposed *Bivens* claim may proceed. The first step is whether the case presents "a new *Bivens* context." *Id.* at 492. If a claim arises in a new context, courts

11

proceed to the second step and determine whether "there are special factors indicating that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 492.

The Court will first address whether Plaintiffs may proceed with a *Bivens* claim as to their alleged unlawful detention, then as to the alleged unlawful seizure of the U.S. Currency. Plaintiffs do not allege that Murray personally conducted any unlawful search; therefore, the Court does not address whether Plaintiffs plausibly state a *Bivens* claim arising from an unlawful search.

### i. Unlawful detention

The first step in the *Bivens* analysis is to determine whether Murray's alleged unlawful detention of Plaintiffs arises in a new context. "A claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Hernandez v. Mesa*, 589 U.S. 93, 103 (2020). A case presents a new *Bivens* context if the case "is different in a meaningful way from previous *Bivens* cases decided by this Court, then the context is new." *Ziglar v. Abbasi*, 582 U.S. 120, 140 (2017). To determine whether a case is meaningfully different, factors to consider include the "rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not

consider. *Id*. A case may also arise under a new context if it involves a "new category of defendants." *Egbert*, 596 U.S. at 492.

Murray argues that the Plaintiffs lawsuit is distinct from *Bivens* in several meaningful respects—that the alleged conduct did not occur in the Plaintiffs' home, and that judicial guidance governing vehicle searches differs from guidance regarding government intrusions into the home. Murray does not cite any Seventh Circuit caselaw in which the court determined whether a plaintiff could seek a *Bivens* claim to a Fourth Amendment unlawful seizure claim in the context of a traffic stop. But other Courts of Appeals have done so.

The Second Circuit recognized a *Bivens* claim where the plaintiff alleged that the U.S. Forest Service officer prolonged a traffic stop beyond the time needed to issue citation in violation of the Fourth Amendment. *McLeod v. Mickle*, 765 Fed. Appx. 582, 585 (2d Cir. 2019). The Fourth Circuit also recognized a *Bivens* action arising from a traffic stop by United States Park police officers where the officers allegedly seized a driver in violation of the Fourth Amendment, reasoning that the case involves "not an extension of *Bivens* so much as a replay of the same principles of constitutional criminal law prohibiting the unjustified warrantless seizure of a person." *Hicks v. Ferreyra*, 64 F.4th 156, 167 (4th Cir. 2023), *cert. denied*, 144 S. Ct. 555 (2024). The *Hicks* court further reasoned:

> As in *Bivens*, Hicks filed suit to hold accountable only line-level investigative officers, not high-ranking officials. The claims against the officers in both the present case and in *Bivens* were based on the officers' discrete actions and did not implicate large-scale policy decisions or other general directives or statutes. Instead, the officers' actions here and in *Bivens* were taken in purported

13

>execution of principles of criminal law well-informed by decades of judicial guidance regarding the Fourth Amendment prohibition on the warrantless seizure of citizens without reasonable, articulable suspicion or probable cause.

*Id.* (citations omitted).

*Hicks* is not binding precedent, but the court's reasoning is persuasive. Here, while the location of the alleged Fourth Amendment violation took place in the context of a traffic stop, it was nonetheless, like *Bivens*, an alleged warrantless seizure without probable cause. *See Snowden v. Henning*, 72 F.4th 237, 247 (7th Cir. 2023) (finding distinction that alleged Fourth Amendment violation conduct occurred at a hotel rather than a home as not meaningful in recognizing a *Bivens* excessive force claim). Murray's contentions that "judicial guidance regarding the *search* of vehicles differs markedly from guidance regarding government intrusions into the home" (ECF 27 at 14) is not relevant when the issue here relates to whether Murray allegedly unconstitutionally *seized* Plaintiffs. Nor is Murray a new category of defendants. *See Egbert*, 596 U.S. at 492. *Bivens* concerned a Federal Bureau of Narcotics officer. As the Seventh Circuit observed, a DEA agent "operate[s] under the same legal mandate as officers in *Bivens*—the enforcement of federal drug laws." *Snowden*, 72 F.4th at 246-47. Murray cautions that if Murray were subject to suit, it could impact "valuable federal-state law enforcement cooperating." This argument is unavailing, as the Supreme Court has already permitted such an impact in *Bivens*. *See Snowden*, 72 F.4th at 246 (permitting *Bivens* remedy in excessive-force claim, and noting that the risk of a "disruptive intrusion into the functioning of other branches…is no more disruptive than what *Bivens* itself already approved."); *see also Ziglar*, 582 U.S. at 134 (Court's decision to not extend *Bivens* is "not

14

intended to cast doubt on the continued force, or even the necessity, of *Bivens* in the search-and-seizure context in which it arose"). Accordingly, Plaintiffs' *Bivens* claim arising from Plaintiffs' alleged unlawful seizure without probable cause may proceed.

### ii. Seizure of U.S. Currency

Plaintiffs' *Bivens* claim arising from the alleged unconstitutional seizure of their U.S. Currency, however, is meaningfully different. None of the *Bivens* cases concerned constitutional claims arising from the seizure and forfeiture of property in violation of the Fourth and Fifth Amendments. The Court then proceeds to step two of the *Bivens* analysis, paying "special attention to separation-of-powers concerns, considering whether special factors indicate that Congress is better equipped in the specific context to assess the costs and benefits of a damages remedy." *Snowden*, 72 F.4th at 244. The Supreme Court has instructed courts to not create a *Bivens* cause of action where "Congress already has provided, or has authorized the Executive to provide, an alternative remedial structure."*Egbert*, 596 U.S. at 493.

The Court previously declined to extend *Bivens* where the plaintiff alleged federal officers submitted false evidence for purposes of seizing the plaintiffs' assets, and deprived plaintiffs of their property without due process. *Economan v. Cockrell*, No. 1:20-CV-32, 2020 WL 6874134, at *22, 26 (N.D. Ind. Nov. 23, 2020). The Government also points to an unpublished Fifth Circuit decision where the court held that no *Bivens* claim was available for an unconstitutional forfeiture of property because "the Civil Asset Forfeiture Reform Act (CAFRA) provides a comprehensive statutory scheme for challenging a civil forfeiture." *Rankin v. United States*, 556 Fed. Appx. 305, 311 (5th Cir.

2014). The Court is also unaware of any caselaw in which a court extended *Bivens* to allow a remedy for an alleged unconstitutional seizure and forfeiture of property. Considering that the Supreme Court "has repeatedly cautioned against implying new remedies," *Sargeant v. Barfield*, 87 F.4th 358, 365 (7th Cir. 2023), the Court declines to extend the bounds of *Bivens* here. *See also Egbert*, 596 U.S. at 492 ("If there is even a single reason to pause before applying *Bivens* in a new context, a court may not recognize a *Bivens* remedy.") (quotations omitted). Murray's motion to dismiss as to Plaintiffs' *Bivens* claim arising from the alleged seizure of their U.S. Currency is granted.

### d. Qualified immunity

Lastly, Murray argues that dismissal is proper because qualified immunity shields him from liability. "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al–Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "[T]he dispositive question" in determining whether a right is "clearly established" is "whether the violative nature of particular conduct is clearly established." *Ziglar*, 582 U.S. at 151 (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)). "Because a qualified immunity defense so closely depends on the facts of the case, a complaint is generally not dismissed under Rule 12(b)(6) on qualified immunity grounds." *Reed v. Palmer*, 906 F.3d 540, 548 (7th Cir. 2018) (quotations and citation omitted).

16

"When the constitutionality of an action depends on the existence of probable cause, the officer must have had 'arguable probable cause' for qualified immunity to attach." *Bruce v. Guernsey*, 777 F.3d 872, 878 (7th Cir. 2015) (quoting *Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir. 1998)). "Thus, even when an officer lacks probable cause, he is still entitled to qualified immunity when a reasonable officer could have reasonably believed that probable cause existed in light of well-established law." *Id*. at 878-89.

Murray argues that he is entitled to qualified immunity because "Murray's actions were objectively reasonable after hits were determined by two K-9 units on Plaintiffs' vehicle and currency."(ECF 27 at 22). As the Court already discussed, taking Plaintiffs' allegations as true, Plaintiffs have plausibly alleged that Murray, who allegedly arrived after the first K-9 alerted but no contraband was found, lacked probable cause to continue Plaintiffs' detention. Plaintiffs have also plausibly alleged that Murray did not have probable cause to continue Plaintiffs' detention and seizure of their U.S. Currency when the second K-9 allegedly alerted to the empty envelope. *See Miller v. City of Plymouth*, No. 2:09-CV-205-JVB, 2012 WL 3527229, at *5 (N.D. Ind. Aug. 15, 2012) (holding that qualified immunity could not be resolved because there was a material dispute as to whether the K-9's alert was reliable, and defendant had probable cause to detain plaintiffs). The Court declines to find that Murray is entitled to qualified immunity at this stage.

## IV.  CONCLUSION

For the foregoing reasons, Murray's motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**. (ECF 26). Plaintiffs' *Bivens* claim based on the seizure of Plaintiffs' U.S. Currency is **DISMISSED**. Plaintiffs' remaining claims may proceed.

SO ORDERED on March 11, 2025.

                                                /s/*Cristal C. Brisco*
                                                CRISTAL C. BRISCO, JUDGE
                                                UNITED STATES DISTRICT COURT